<pre>
 1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
 2                         EASTERN DIVISION


 3
        UNITED STATES OF AMERICA,      Case No. 5:18-cr-250
 4                                                5:19-cr-670
                   Plaintiff,
 5
            vs.                        Cleveland, Ohio
 6                                     TUESDAY, JULY 14, 2020
        BRIAN KEITH NEWELL, JR.,
 7
                   Defendant.
 8


 9
               TRANSCRIPT OF SUPERVISED RELEASED VIOLATION
10                 AND SENTENCING PROCEEDINGS
              BEFORE THE HONORABLE DAN AARON POLSTER
11                 UNITED STATES DISTRICT JUDGE
                   HELD VIA ZOOM VIDEOCONFERENCE
12

13      APPEARANCES:

14      For the Government:      Kathryn Gaughan Andrachik,
                                 Assistant United States Attorney
15

16      For the Defendant:      Rodger A. Pelagalli, Esquire

17
        For Probation:          Bradley Fabian
18                               Donald Stranathan

19


20
        Chief Court Reporter:   Sarah E. Nageotte, RDR, CRR, CRC
21                               United States District Court
                                 801 West Superior Avenue
22                               Court Reporters 7-189
                                 Cleveland, Ohio 44113
23                               (216) 357-7186

24

25        Proceedings recorded by mechanical stenography, transcript
              produced with computer-aided transcription.
</pre>

|            |    |                                                              |
|------------|----|--------------------------------------------------------------|
|            | 1  | (Proceedings commenced at 12:43 p.m.)                        |
|            | 2  | - - -                                                        |
|            | 3  | THE COURT:  All right.  We're on case                        |
|            | 4  | 5:19-cr-670, United States versus Brian Keith Newell.        |
| 12:43:30   | 5  | Mr. Newell is present with counsel, Mr. Pelagalli.           |
|            | 6  | Ms. Andrachik's here for the Government.                     |
|            | 7  | We've got a representative of Probation.                     |
|            | 8  | I'm also taking up the supervised release violation          |
|            | 9  | from case 5:18-cr-250.  Mr. Newell was on supervised release |
| 12:44:02   | 10 | to Judge Gwin and, by protocol, the sentencing judge handles |
|            | 11 | that, so I'm taking up both of them.                         |
|            | 12 | So I've received and reviewed the presentence report.        |
|            | 13 | I've received the violation report, the latest one.  I've    |
|            | 14 | read the defendant's sentencing memorandum.                  |
| 12:44:22   | 15 | All right.  Mr. Newell, have you received a copy of           |
|            | 16 | your -- first, your presentence report?                      |
|            | 17 | THE DEFENDANT:  Yes, sir.                                     |
|            | 18 | THE COURT:  Did you have a chance to read it                 |
|            | 19 | carefully and to discuss it with Mr. Pelagalli and ask him   |
| 12:44:36   | 20 | any questions that you might have had?                        |
|            | 21 | THE DEFENDANT:  Absolutely, yes.                             |
|            | 22 | THE COURT:  All right.  I see there are no                   |
|            | 23 | objections to the report by the Government or the defendant. |
|            | 24 | Is that correct?                                             |
| 12:44:46   | 25 | THE DEFENDANT:  Yes, sir.  Yes, sir.                         |

1            MR. PELAGALLI:  That's correct, Your Honor.

2            THE COURT:  All right.  Well, I want to go

3     over the advisory guidelines computation.

4         We start at a base offense level of 12.  We add two

12:44:59 5     levels because the offense involved more than two threats,

6     so that's 14.

7         Mr. Newell is eligible for the two-level reduction of

8     acceptance -- for acceptance of responsibility, so that's

9     12.

12:45:13 10        And he is in Criminal History Category IV.

11        So a 12, Category IV, gives an advisory range of 21 to

12     27 months.

13        We agree that's the advisory range?

14            MR. PELAGALLI:  Yes, Your Honor.

12:45:45 15            MS. ANDRACHIK:  Yes, Your Honor.

16            THE COURT:  Okay.  All right.  And then, Mr.

17     Newell, have you received the latest -- the violation

18     report, I guess the latest one I have is April 17th?

19            THE DEFENDANT:  Yes, sir.  I received a copy.

12:46:03 20            THE COURT:  All right.  You're entitled to a

21     hearing on that, but, obviously, this new conviction is a

22     violation.

23        Are you prepared to waive hearing and admit to the

24     violation?

12:46:12 25            THE DEFENDANT:  Yes, sir.

1           MR. PELAGALLI:  Yes, Your Honor.

2           THE COURT:  All right.  You understand --

3    there's a lot of feedback here.

4        All right.  The advisory -- because this is a Grade A

12:46:31 5    violation, you're in Criminal History Category III, the

6    advisory range is 24 months.

7        Do you understand that, sir?

8           THE DEFENDANT:  Yes, sir.  Yes, sir.

9           THE COURT:  And then any sentence I impose

12:46:46 10  could be consecutive on top of the sentence I impose for the

11   new crime, the threats.

12       Do you understand that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  And you're prepared to waive

12:46:54 15  hearing and admit to that violation?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Okay.  I find that's a knowing and

18   voluntary waiver, I accept it, and find that you have

19   committed this Grade A violation.

12:47:04 20      So I'll hear from both counsel, and you can address

21   the sentence for the new case and what I should do for the

22   supervised release.

23       So, Mr. Pelagalli.

24          MR. PELAGALLI:  Thank you, Your Honor.

12:47:20 25      May it please this Court, counsel, everybody joining

1    us.

2         Your Honor, Brian joins you here virtually today

3    penitent and disappointed in himself for the choices that he

4    made that bring him before you today.  Indeed, his

12:47:33 5    involvement in this matter is not the man he wants to be,

6    the father he wants to be, or the citizen he wants to be.

7         As this Honorable Court reviews the law, the PSI, and

8    the 3553 factors in determining an appropriate sentence for

9    Brian for this charge, as well as for the violation, we

12:47:51 10   would respectfully request that the Court consider not only

11   the arguments contained in the sentencing memorandum filed

12   and in the supplement with the family, friends, and

13   counselor letters of character reference, but also the fact

14   that he deserves lenience here, a low-end of the guidelines

12:48:12 15   sentencing, due to the fact that he wasn't involved in this

16   situation for personal gain or anything else.

17        I think -- and it's no excuse for his behavior that he

18   has stood up and accepted, but it's no excuse, but his

19   titrating of medicines for his dual diagnosis for his

12:48:30 20   addiction, those medicines, as they change and are altered

21   over a period of time, are -- have a direct affect on him,

22   that's our understanding from not only the PSI but also

23   speaking with Brian and with folks that have treated him

24   over the past.  Again, not an excuse for his behavior.

12:48:48 25        He understands that he cannot make these threats.  He

1    understands that he can't treat this woman this way or any

2    other person that way.  But by way of understanding and

3    putting some illumination on the fact that he does have

4    these issues that he's dealing with on a regular basis and

12:49:03  5    he does need medication to titrate his mental chemistry, if

6    you will.

7         I would also note that during this representation,

8    Brian has shown himself to be somebody who takes his

9    parenting very seriously.  He has suggested to me over and

12:49:17 10    over again his concerns for his children who are living, not

11    only as he put it, in the projects but also dealing with the

12    civil unrest that is currently a part of the United States

13    as we speak but also the pandemic of COVID.

14         He feels guilty for the fact that he is where he is

12:49:33 15    and can't be out there to provide them with assistance

16    dealing with all of these issues that young people are

17    dealing with today.  He wants them to be safe.

18         He has realized that to this point he has been a very

19    bad example to his children.  The fact that he realizes that

12:49:50 20    I think is telling in the sense that, quite frankly, he

21    wants to be that good father.  He wants to protect his

22    children.  He wants to be a good citizen.  He wants to be a

23    good example for them.

24         We've talked about the fact that you can lecture

12:50:04 25    children but that doesn't matter, it's your actions that

1    matter, and he has realized and agrees that his examples to

2    this point are not positive.  But he wants to be that

3    positive role model for his children and the person that

4    keeps them safe.

12:50:18  5          I think that Brian, who this Court is aware has a high

6    school equivalent, should be aware that he also wants to

7    learn, if he's part of the Bureau of Prisons at a facility

8    that would give him a trade or something to work towards

9    while incarcerated so he's just not wasting time.  He

12:50:37 10   already knows the wrong that has been done but he wants to

11   be that better citizen that we've talked about.

12          He also respectfully requests that this Honorable

13   Court grant him the necessary treatment for purposes of

14   dealing with his addiction -- alcohol, drugs, et cetera --

12:50:51 15   and also with regard to his mental health.

16          He would respectfully request time served towards any

17   sentence this Court determines.

18          And he would suggest that, again, he wasn't involved

19   in this for personal gain.  He has never been a person to

12:51:07 20   cause harm to anybody outside of these threats.  He's made

21   threats, as this Court is well aware, in a prior case, he's

22   made threats in this case, but it's not something that his

23   criminal history tells us he has ever actually taken the

24   step to do physical harm to anybody.  Again, I would point

12:51:22 25   to the illuminating fact of the drugs and the medications

1    that had an affect on him.

2        Your Honor, he asks that you consider the low-end of

3    the sentencing guidelines and fashion a sentence that is

4    sufficient, but not greater than necessary, to comport with

12:51:38  5    the 3553 factors.

6        In this regard, we've asserted in the sentencing

7    memorandum that because of the prior matter that you

8    previously sentenced him for, because of the issue with

9    regard to the violation because of these charges -- and,

12:51:53  10    again, I think one of the reasons I'm a lawyer not a doctor

11    is because there's a lot of math in being in medicine -- but

12    the math in this case seems to suggest that even though he

13    has agreed, and we have agreed in the plea agreement, that

14    it's a 21-to-27-month sentencing guideline range for this, I

12:52:08  15    think the low-end of that or something lower would be

16    appropriate given the fact that had the prior case.  In

17    essence, he's getting a criminal history enhanced and he's

18    getting an enhancement, all of which, quite frankly, would

19    have led to a 15-to-21-month sentence.

12:52:27  20        And again, putting that aside, the reality is that

21    Brian has stepped up and wants to be the good father, good

22    person, good man, and good citizen that he knows he can be.

23        We would ask that this Court, when considering the

24    violation and a sentence put -- for that, run them

12:52:43  25    concurrent.  It will serve no purpose to have him

1    incarcerated for a longer period of time given the fact that

2    he understands and knows what he has done.

3          Thank you, Your Honor.

4                THE COURT:  All right.  Thank you, Mr.

12:53:01  5    Pelagalli.

6          Mr. Newell, anything you'd like to say, sir?

7                THE DEFENDANT:  Yes, sir.

8          First, I'd like to apologize to the mother of my kids

9    and my kids, you know what I mean, from being away so long.

12:53:13 10    This is the longest I've ever been away ever in my whole

11    life.  So I haven't seen my kids in seven months.

12          My mental health is terrible right now.  All I need to

13    do is see my kids, I know would give me a boost in my

14    motivation and everything.

12:53:26 15          But, anyways, I've been struggling with my mental

16    health since a child.  This is not nothing new.  I've been

17    in special education, alternative schools, juvie, and it's

18    like I'm constantly getting thrown in the trash always.  I

19    feel like America's trash right now.

12:53:43 20          Every time I go to court, I get a crazy sentence.

21    I've never killed nobody, shot nobody, stabbed nobody, done

22    nothing crazy, and I'm just -- I'm seeing a terrible side of

23    the court systems.  Like, I feel like I'm not getting any

24    justice.

12:53:57 25          I'm not asking for a lighter sentence.  I'm not asking

1    for -- for leniency.  I would like that, yes, but I'm asking

2    for, at the end of all this, can you at least send me to

3    mental health treatment, not just right back to the streets?

4         I got kids, two daughters, two baby girls that I have

12:54:14  5    to take care of.  I have a responsibility as a man and as a

6    Muslim to take care of my kids as well as my wife.  Until we

7    sign a certificate of divorce, I have to provide and protect

8    for them, period, regardless.

9         I'm just asking the courts, like, hear me out.  Like,

12:54:31 10   I'm struggling.  This place is terrible.  These federal

11   spots are terrible.  I've seen people stabbed.  I've seen

12   people killed.  This place is insane.  The place I'm at

13   right now is the most unsafe jail I've ever been in in my

14   life.

12:54:46 15        I'm going through a lot.  The streets is going through

16   a lot.  We've got civil unrest, COVID.  My kids are out of

17   school and their dad's not there.  Like, I'm not there at

18   all, and I maybe talk to them maybe once, once every two

19   weeks or something like that, whenever I catch them with my

12:55:02 20   mom or -- this is just insane to me.

21        I'm just asking you guys for some help.  I'm not

22   asking for leniency.  I'm not asking for a lighter sentence.

23   I'm asking for when this is all over with, when I walk out

24   of jail, I can walk into a treatment facility and I can get

12:55:16 25   some help, and then I can at least say y'all did that for me

1    so if anything ever happens again, there's no excuse.  I got

2    every aspect, every -- everything has been exhausted, every

3    choice has been exhausted.

4         I just want some help, man.  I'm struggling.  I'm

12:55:31  5    struggling, Your Honor.  I'm struggling bad.  I'm falling

6    apart day by day in this place.  This is -- this -- there's

7    no ride-outs.  It's jammed packed.  It's full.  This is

8    crazy.  This place is crazy.  I'm losing my mind, Your

9    Honor.

12:55:48  10         That's all I would like to say.

11              THE COURT:  All right.  Thank you, Mr. Newell.

12         Ms. Andrachik, for the Government.

13              MS. ANDRACHIK:  Thank you, Your Honor.

14         Your Honor, the United States believes a high-end of

12:55:55  15    the guideline range sentence is appropriate in this case.

16         This defendant has -- this will be his second federal

17    conviction for the exact same conduct.  He was released on

18    supervised release for his conviction back in 2018 on

19    March 20th, 2019.

12:56:15  20         And for that conviction, where he threatened the same

21    person, the mother of his children and his wife, he received

22    eight months' custody.  And then, less than four months

23    after he was released from custody on supervised release, he

24    threatened her again, and that's what we're here for today.

12:56:32  25         There's a lot of talk about how he wants -- the

1    defendant wants to protect his -- the mother of his

2    children, his wife, his children, but the best way for him

3    to protect -- for you to protect the community, his wife,

4    his children is for him to be in prison.  He is there

12:56:49  5    because of his own actions.

6         He has not been a good example for his kids, clearly,

7    and maybe eventually he will be, but right now, they don't

8    need him out on the streets in their lives because he is a

9    threat to them.  He is a danger to them.

12:57:04  10        And his conviction back in 2018, not only did his

11   threats involve the mother of his child and his wife -- I

12   apologize.  My sound went out for a second.

13        Not only did those threats involve the mother of his

14   child and his wife, but he also threatened to kill his

12:57:17  15   children.  So, Your Honor, he is a severe danger to the

16   community.  He has not been deterred by a criminal sentence

17   before.

18        And so, the United States believes that it is

19   important for him to serve a high-end of the guideline range

12:57:35  20   sentence so that he can learn from his mistakes, possibly

21   get better, but at the very least, protect his wife, give

22   her an opportunity to live her life without fear, without

23   being afraid of what he is going to do.

24        And he said that he has not shot anyone yet, he has

12:57:50  25   killed anyone, but he may.  He's capable of it.  He has that

1    sort of mentality.

2         Your Honor, we ask [Zoom audio interference].

3         Thank you.

4              THE COURT:  All right.  Thank you, Ms.

12:58:05  5    Andrachik.

6         Do you have -- neither counsel really addressed the

7    supervised release and what I should do.

8         I mean, Mr. Pelagalli, do you have a recommendation?

9              MR. PELAGALLI:  Yeah.  I believe in the

12:58:19 10    sentencing memorandum we did assert that we would ask for

11    somewhere where he can get treatment for those diagnoses

12    that are contained in the PSI.

13         He -- as he's readily admitted here today, Your Honor,

14    he does have issues that go back to when he was a child, and

12:58:36 15    I believe those are covered in his health section and --

16              THE COURT:  I know that, but that is

17    recommending treatment.

18         But in terms of additional sentence, what are the --

19    what are you recommending I do?

12:58:46 20              MR. PELAGALLI:  Well, with regard to this

21    sentence, if there is a medical facility, as I understand

22    it, and I believe it's the one -- I can't remember the name

23    right now, and they change it occasionally, but -- and

24    because of COVID, I know my research has shown that the

12:59:01 25    Bureau of Prisons is having trouble at the medical

1    facilities because of the issues of the pandemic, but he

2    needs somebody --

3                   THE COURT:  I believe it's Devens.

4                   MR. PELAGALLI:  That may be it.  That sounds

12:59:14   5    correct.

6         What I would ask is that he be allowed -- that when

7    the Bureau of Prisons does his review, his file, that they

8    look for mental health assistance in that regard.

9         And again, one of the issues that I think was clear

12:59:24  10    from the PSI and from speaking with Brian was that the --

11    even when he was receiving medication for his issues, the

12    titrating or the balancing of those, new versus old or

13    dosages, was one of the things that -- I don't know that

14    this is the correct psychiatric term -- but a trigger for

12:59:43  15    him, and those are the things that have to be dealt with.

16         Again, the suggestion that --

17                   THE COURT:  All right.

18                   MR. PELAGALLI:  -- high-end, low-end,

19    whatever, I think -- I think Brian wants help.

12:59:58  20                   THE COURT:  All right.  I'll make my own

21    decision.

22         But I just want to know if you have any recommendation

23    as to what, if any, additional penalty I impose for the fact

24    that he committed this crime while he was on supervised

13:00:09  25    release to Judge Gwin for the same offense?

1           You're on mute, Mr. Pelagalli.

2                   MR. PELAGALLI:  I argue better when I'm on

3       mute, Your Honor.  I apologize.

4           But I would suggest that the Court does have to

13:00:28 5       sentence him for the violation, low-end of that, low-end of

6       the -- of the sentencing guidelines for this violation, and

7       run them concurrent so that he can get on with his life, get

8       onto the treatment he needs, and -- and become that father

9       and citizen he believes he can be.

13:00:44 10                  THE COURT:  Okay.  All right.  Ms. Andrachik,

11      do you have any recommendation on the supervised release?

12                  MS. ANDRACHIK:  Yes, Your Honor.

13          I apologize I didn't address that in my argument, but

14      the United States would ask that the supervised release

13:00:57 15      violation sentence be a guideline sentence to run

16      consecutive to the sentence for the instant offense for the

17      same reasons I stated.

18          He is a severe danger to the community, and in order

19      to deter him from engaging in this behavior in the future,

13:01:11 20      the United States believes a term of incarceration

21      consecutive to the instant offense is appropriate.

22                  THE COURT:  All right.  The Court has reviewed

23      the thorough presentence report and the supervised release

24      report.  I've read everyone's memoranda, listened carefully

13:01:31 25      to both counsel and to you, Mr. Newell.

1       The touchstone of sentencing is 18 U.S.C. 3553(a).

2       Excuse me a second.

3                    (Pause in Proceedings)

4                    THE COURT:  18 U.S.C. 3553(a).

13:01:51  5       I'm required to consider everything I can learn about

6   you, Mr. Newell, and everything I can learn about this

7   crime, and the supervised release violation, and then give

8   you a sentence that's sufficient, but not longer than

9   necessary, to meet the statutory purposes of sentencing,

13:02:08 10  which are:  Punishment, deterrence, protecting the

11  community, and rehabilitation.  And for supervised release,

12  it's the same, except the main purpose of supervised release

13  is rehabilitation.

14       I mean, sadly, I understand you've been struggling

13:02:27 15  with drug addiction and mental health problems, but your

16  wife was very scared the first time when you threatened her,

17  threatened to kill her, and Judge Gwin gave you an

18  eight-month sentence, and then, almost as soon as you got

19  out, you were having problems with supervised release and

13:02:50 20  then you went and did the same thing again.

21       And you're saying you didn't have -- you haven't shot

22  anyone or harmed anyone, but you've threatened someone, your

23  wife, twice, and there was another victim on the first

24  offense, so they certainly took those threats seriously, and

13:03:09 25  you've caused serious psychiatric harm to your wife, and

1       I've -- you've got to face the consequences for it.

2           So I've got to balance everything.  So the advisory

3   range for the new law violation is 21 to 27 months, and the

4   advisory range for the supervised release is 18 to

13:03:37  5   24 months.

6           I'm going to sentence you to 24 months' custody for

7   the new law violation.  And I'm going in the midpoint

8   because of your background and the fact that you -- this is

9   the second time in a very short period that you committed

13:03:55 10   this offense.

11           And I'm going to sentence you to the maximum of

12   24 months on the supervised release, but I'm going to run

13   12 months consecutive and 12 months concurrent.  I think

14   that's the right balance, and I'm trying to balance the fact

13:04:13 15   that you have some psychiatric issues, mental health issues

16   that are not of your making.  You're ill.

17           So it will be a total of 36 months' custody.

18           You get credit for time served, which started

19   December -- it looks like December the 13th of 2019.

13:04:32 20           There's going to be no supervised release to follow on

21   the -- on Judge Gwin's case.  You're done with that.

22           I am putting you on -- well, first of all, I'm going

23   to recommend that the Bureau of Prisons put you in a medical

24   facility now.  I think you need it.  But again, that's only

13:04:49 25   a recommendation.

1          And I'm going to recommend that you get mental health

2     treatment while you're in custody.  Someone's got to monitor

3     your medication and -- and help you -- help you with the

4     mental health issues you've got.

13:05:06  5          Your prison sentence will be followed by three years

6     of supervised release.  All the standard conditions apply.

7          In addition, there will be drug aftercare, mental

8     health aftercare, cognitive behavioral therapy, the search

9     and seizure provision, and absolutely no contact with the

13:05:25 10     victim.

11          Now, are you -- are you still married?

12               THE DEFENDANT:  Yes, sir.

13               THE COURT:  Well --

14               THE DEFENDANT:  And if it means anything, she

13:05:33 15     contacts my family all the time asking about my condition,

16     asking about me, asking about everything.

17          Me and my -- I would never hurt my wife or my kids.

18     Have I ever?  No.  I would never hurt my wife and my kids,

19     and for this lady to say the stuff she did -- man, this is

13:05:50 20     ridiculous.  Man, there's no justice.  There's no justice.

21     There's no such thing as justice.  There's no such thing as

22     justice.

23               THE COURT:  Mr. Newell, you pled guilty to

24     threatening her twice.

13:05:57 25               THE DEFENDANT:  It doesn't matter.  Help me.

1    I'm struggling.  I'm struggling.  I need help.  I --

2                  THE COURT:  Mr. Newell.  Mr. Newell.

3                  THE DEFENDANT:  You just sent me to prison.

4    The BOP ain't going to help me.  I've been to the BOP.  I've

13:06:12  5    been to the BOP.  The BOP ain't here to help me, sir.  The

6    BOP isn't here to help me.

7                  THE COURT:  Well, the BOP has a good medical

8    facility.

9                  THE DEFENDANT:  A mental hospital is here to

13:06:20 10    help me.  You can sentence me to a mental hospital.  You can

11    do that after the sentence.  I'm not asking for -- when I

12    come home, I'm just going to be straight back to the streets

13    again.

14        I'm scared, man.  I'm falling apart, sir.  You're

13:06:31 15    sending me back straight to the streets.

16                  THE COURT:  Well, the idea is before you go

17    back to the streets that you get some counseling and --

18                  THE DEFENDANT:  I'm not going to get any help

19    at the BOP.

13:06:40 20                  THE COURT:  Well, that's the only place that

21    you've got, sir.  That's the only thing that I can do.

22        So I'm --

23                  THE DEFENDANT:  Just to let you know, my wife

24    contacts me all the time.  She wants to talk to me.  She

13:06:53 25    wants to be married to me still.  Everything's cool.  It's

1     all right.  But it's cool.  It's cool.

2          Fuck the police.  Fuck the --

3                    COURTROOM DEPUTY:  Excuse me, Mr. Newell.

4                         (Pause in Proceedings)

13:07:05  5                    THE COURT:  You and your wife will have to

6     figure it out.

7          I'm not imposing a fine.  You don't have the resources

8     to pay it.

9          There's a $100 special assessment that's due and

13:07:17 10     payable immediately.

11          All right.  Are there any general or specific

12     objections from either side?

13                    COURTROOM DEPUTY:  Mr. Newell, please.

14          Officer.

13:07:26 15                    THE COURT:  Mr. Newell.

16          All right.  I think I'm going to have Mr. Newell

17     removed.

18                    THE DEFENDANT:  Am I struggling?  Am I

19     struggling?  Look at me pulling my hair out.  Look at my

13:07:32 20     arms.  They're cut up.

21                    COURTROOM DEPUTY:  Mr. Newell, get the officer

22     right now.

23                    THE COURT:  All right.  Get the officer.

24          And I'm going to put you in a medical facility right

13:07:40 25     now.  You've been sentenced.

1          COURTROOM DEPUTY:  Get the officer.

2          THE COURT:  Where is the officer?

3     I want Mr. Newell removed and put into a psychiatric

4     facility right away.

13:07:49  5     Where is the officer?

6     Are there any general or specific objections from

7     either counsel?

8          MS. ANDRACHIK:  Not from the United States,

9     Your Honor.

13:08:02 10          MR. PELAGALLI:  No, Your Honor.

11          THE COURT:  All right.  And anything further

12     from either counsel?

13          MS. ANDRACHIK:  Not on behalf of the United

14     States.

13:08:09 15          MR. PELAGALLI:  No, Your Honor.

16     We're just asking for Brian to -- to be able to get

17     the help he needs.

18          THE COURT:  Well, I'm directing that he be

19     transported immediately to a psychiatric facility.  Right

13:08:18 20     now.  If I can get the -- is the officer there?

21     All right.  I want -- what jail is this?

22          COURTROOM DEPUTY:  He is at NEOCC, Your Honor.

23          THE COURT:  All right.  I want --

24          THE DEFENDANT:  Thank you, sir.

13:08:31 25          THE COURT:  I want Mr. Newell taken to a

1    psychiatric facility.

2              THE DEFENDANT:  Thank you, sir.

3         Thank you, sir.

4              THE COURT:  All right.  Right now, I'm

13:08:38  5    directing he be transported to a psychiatric facility for

6    treatment.  He's not stable.  Right now.  And then he will

7    hopefully be transported to a BOP medical facility.

8         All right.  So that's -- Officer, if you can

9    accomplish that.

13:08:55 10              THE DEFENDANT:  Thank you, sir.

11         Thank you.  Thank you.

12              THE COURT:  We're adjourned.

13                   (Pause in Proceedings)

14              THE COURT:  All right.  I'm advising Mr.

13:09:34 15    Newell he has a right to appeal.

16         There was no plea agreement; is that right?

17              MR. PELAGALLI:  There was, Your Honor.

18              THE COURT:  Oh.  Well, then, the appeal has

19    been waived.

13:09:45 20         But out of an abundance of caution, if you want to

21    file a notice of appeal, you have 14 days to do that.

22         But the appeal -- the appeal has been waived under the

23    plea agreement.

24              MR. PELAGALLI:  Thank you, Your Honor.

13:09:57 25              THE COURT:  All right.  We're adjourned then.

1                              - - -

2               (Proceedings concluded at 1:09 p.m.)

3

4

5                        **C E R T I F I C A T E**

6        I certify that the foregoing is a correct transcript
     of the record of proceedings in the above-entitled matter
7    prepared from my stenotype notes.

8            */s/ Sarah E. Nageotte              8/24/2020*
             SARAH E. NAGEOTTE, RDR, CRR, CRC          DATE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25